IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff/<br>　　　　　Respondent.<br><br>　　vs.<br><br>JOHNNY TED NASH,<br><br>　　　　　Defendant/<br>　　　　　Petitioner. | No. CR-F-92-5167 REC<br><br>ORDER DENYING PETITIONER<br>JOHNNY TED NASH'S MOTION FOR<br>MODIFICATION OF PRISON TERM |

　　　On March 31, 2005, petitioner Johnny Ted Nash filed a Motion for Modification of An Imposed Term of Imprisonment pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 994(o).[1]

　　　The United States was ordered to respond to petitioner's motion. All briefing now being complete, the court denies petitioner's motion for the reasons set forth herein.

　　　Petitioner was convicted by jury trial on two counts of

---

[1] This action was assigned to Judge Robert E. Coyle because of the death of Judge Edward Dean Price.

1

conspiracy to manufacture methamphetamine, one conspiracy occurring in 1986-1988 and the other occurring in 1992. In addition, petitioner pleaded guilty to a charge of failure to appear in No. CR-F-93-5013 EDP. Petitioner was sentenced on April 26, 1994 to 348 months in custody in the instant case and 12 months in custody in No. CR-F-93-5013 EDP, to be served consecutively to the sentence imposed in the instant case. Petitioner's conviction and sentence in the instant case were affirmed on appeal. Petitioner thereafter filed several motions unsuccessfully collaterally attacking his conviction and sentence.

In the motion presently before the court, petitioner contends that he is entitled to be re-sentenced pursuant to Amendments 484 and 591 to the Sentencing Guidelines.

18 U.S.C. § 3582(c)(2) provides that the court may not modify a term of imprisonment once it has been imposed except that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant ..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Both Amendments 484 and 591 have been declared by the Sentencing Commission to authorize a reduction in a defendant's term of

2

imprisonment pursuant to Section 3582(c)(2).  See U.S.S.G. § 1B1.10.

**A.  Amendment 484.**

Amendment 484, effective November 1, 1993, provided:

> The Commentary to §2D1.1 captioned 'Application Notes' is amended in Note 1 by deleting '21 U.S.C. § 841.' and inserting in lieu thereof:
>
>> '21 U.S.C. § 841, except as expressly provided.  Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be use.  Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste material from an illicit laboratory used to manufacture a controlled substance.  If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.
>>
>> An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.'
>
> **REASON FOR AMENDMENT:** The amendment addresses an inter-circuit conflict regarding the meaning of the term 'mixture or substance,' as used in §2D1.1 by expressly providing that this term does not include portions of a drug mixture that have to be separated from the controlled substance before the controlled substance can be used.  This issue has

3

>arisen, subsequent to the Supreme Court decision in Chapman v. United States, 111 S.Ct. 1919 (1991), in two types of cases. The first type of case involves a controlled substance bonded to, or suspended in, another substance (e.g., cocaine mixed with beeswax); however, the controlled substance is not usable until it is separated from the other substance ... The second type of case involves the waste produced from an illicit laboratory used to manufacture a controlled substance or chemicals confiscated before the chemical processing of the controlled substance is completed.  The waste product is typically water or chemicals used to either remove impurities or form a precipitate (the precipitate, in some cases, being the controlled substance).  Typically, a small amount of controlled substance remains in the waste water; often this amount is too small to quantify and is listed as a trace amount (no weight given) in DEA reports.  In these types of cases, the waste product is not consumable.  The chemicals seized before the end of processing are also not usable in that form because further processing must take place before they can be used ....

Petitioner contends that he is entitled to a reduction in his sentence pursuant to Amendment 484 because the conversions of Government expert Mark Kalcheck concerning the amounts of methamphetamine that could be manufactured from the ephedrine seized during the investigation of the conspiracies were never tested by the defense.  Petitioner relies on United States v. Sprague, 135 F.3d 1301 (9th Cir. 1998), wherein, when applying Amendment 484 to a motion for reduction of sentence under Section 3582(c)(2), the Ninth Circuit held:

>[O]nce the movant has carried his burden of showing that the sentence imposed was based on the entire weight of a mixture containing materials that must be separated from the controlled substance to render it usable,

4

        Amendment 484 applies, and a district court must exclude the weight of any non-usable materials from the total weight of the mixture in calculating the base offense level.  The Government bears the burden of showing the weight of the controlled substance for purposes of determining the base offense level.  Finally, the sentence should be calculated as if the amendment had been in effect at the time of sentencing, and the district court may employ alternative means for determining the base offense level as allowed by the Guidelines.

135 F.3d at 1307.

    Petitioner is not entitled to a reduction of his sentence pursuant to Amendment 484.  The change to the Sentencing Guidelines made by Amendment 484 was in effect at the time petitioner was sentenced on April 26, 1994.  Because Amendment 484 was adopted and in effect at the time petitioner was sentenced, Section 3582(c)(2) by its terms does not apply.

    Furthermore, in calculating the base offense level, the Presentence Investigation Report states in pertinent part:

        30.  Normally, the guidelines in effect at the time of sentencing are used.  However, there appears to be an ex post facto concern should the 1993 edition of the Sentencing Guidelines be used in calculating the amount of drugs in the 1986 to 1988 conspiracy.  A review of the 1987 guidelines (the guidelines in effect at the time of the offense) reveal a lesser base offense level in comparison to the 1993 edition.  If the latest edition is used, an argument can be made that such application would unduly punish the defendant by using the more punitive guidelines on the older case.  In **United States v. Seligshon, 981 F.2d 1418 (3rd Cir. 1992),** the Third Circuit ruled the 'single book rule', wherein only a single edition of the guidelines is used to calculate a sentence, must give way to the ex post facto clause of the

5

>        constitution.
>
>        ...
>
>        35.  Count One: The 1987 edition of the
>        <u>Guidelines Manual</u> has been used in this case.
>
>        ...
>
>        37.  The investigation of this case
>        discovered that Mid-Cal Chemical had ordered
>        2,000 pounds of ephedrine from a New York
>        chemical company, which ultimately was
>        delivered to John Lowe for the manufacture of
>        methamphetamine.  According to the lab
>        chemist, the 2,000 pounds of ephedrine
>        produced approximately 1,600 pounds of
>        methamphetamine.  The 1987 guidelines did not
>        specifically include methamphetamine.
>        Instead, a calculation is made using the Drug
>        Equivalency Table (at page 2.42) wherein one
>        gram of methamphetamine is equivalent to two
>        grams of cocaine.  Consequently, 1,600 pounds
>        of methamphetamine equates to 800 pounds of
>        cocaine and results in the base offense level
>        of 36.
>
>        ...
>
>        40.  Count Three: The 1993 edition of the
>        Guidelines Manual has been used in the
>        computation of this offense.
>
>        ...
>
>        43.  This case involves the exchange of five
>        acres for one 'tin' of ephedrine (55 pounds).
>        According to the chemist, this amount of
>        ephedrine could produce as much as 15
>        kilograms of methamphetamine.  It will
>        therefore be recommended the Court adopt the
>        drug quantity of 15 kilograms of
>        methamphetamine, which produces a base
>        offense level of 36.

   If petitioner believed that the calculation of the base

offense levels described in the Presentence Report were in error

because of Amendment 484, which was in effect when petitioner was

6

sentenced, petitioner could have and should have raised the issue on direct appeal or in a motion for relief pursuant to 28 U.S.C. § 2255. Petitioner cannot raise the issue in this motion for reduction of sentence pursuant to Section 3582(c)(2).

### B. **Amendment 591**.

Amendment 591, effective November 1, 2000, but which is applied retroactively, see §1B1.10(c), makes a number of changes to USSG §1B1.1, the Application Notes to §1B1.2, particularly by striking Application Note 3, the Application Notes to §2D1.2, Appendix A (Statutory Index), and the Application Notes to §2H1.1. The reasons for Amendment 591 are explained in the United States Sentencing Commission Guidelines Manual, Supplement to Appendix C [Amendments to Guidelines Manual November 1, 1998, through November 1, 2000], in pertinent part as follows:

> **Reasons for Amendment:** This amendment addresses a circuit conflict regarding whether the enhanced penalties in §2D1.2 (Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals) apply only in a case in which the defendant is convicted of an offense referenced to that guideline or, alternatively, in any case in which the defendant's relevant conduct included drug sales in a protected location ....
>
> In promulgating this amendment, the Commission also was aware of case law that raises a similar issue regarding selection of a Chapter Two (Offense Conduct) guideline, different from that referenced in the Statutory Index (Appendix A), based on factors other than the conduct charged in the offense of conviction ....
>
> The amendment modifies §§1B1.1(a), 1B1.2(a), and the Statutory Index's introductory

7

> commentary to clarify the inter-relationship among these provisions.  The clarification is intended to emphasize that the sentencing court must apply the offense guidelines referenced in the Statutory Index for the statute of conviction unless the case falls within the limited 'stipulation' exception set forth in §1B1.2(a).  Therefore, in order for the enhanced penalties in §2D1.2 to apply, the defendant must be convicted of an offense referenced to §2D1.2, rather than simply have engaged in conduct described by that guideline.  Furthermore, the amendment deletes Application Note 3 of §1B1.2 (Applicable Guidelines), which provided that in many instances it would be appropriate for the court to consider the actual conduct of the offender, even if such conduct did not constitute an element of the offense.  This application note describes a consideration that is more appropriate when applying §1B1.3 (Relevant Conduct), and its current placement in §1B1.2 apparently has caused confusion in applying that guideline's principles to determine the offense conduct guideline in Chapter Two most appropriate for the offense of conviction.  In particular, the note has been used by some courts to permit a court to decline to use the offense guideline referenced in the Statutory Index in cases that were allegedly 'atypical' or 'outside the heartland. ....

Petitioner contends that he is entitled to be resentenced pursuant to Amendment 591 because the determination of the base offense level under U.S.S.G. §2D1.1 was made on the basis of the trial judge's finding of drug quantity rather than on the basis of a specific finding of drug quantity charged in the indictment and found by the jury.

Petitioner's contention is without merit.  Amendment 591 applies to the determination of the appropriate Chapter Two offense guideline section.  Petitioner was sentenced under

8

§2D1.1. Prior to Amendment 591, a court could consider relevant conduct when selecting the applicable offense guideline section. Amendment 591 requires that the initial selection of the offense guideline be based only on the statute of conviction rather than on judicial findings of actual conduct that will never be made by the jury. Petitioner's claim confuses two distinct steps taken to arrive at a guidelines sentence: (1) selection of the applicable offense guideline, and (2) selection of the base offense level within that applicable offense guideline. The purpose of Amendment 591 is to "emphasize that the sentencing court must apply the offense guideline listed in the Statutory Index for the statute of conviction." Amendment 591 is therefore only pertinent in considering the trial court's determination of the applicable sentencing guideline, not the base offense level that the trial court selected once the proper guideline has been chosen. Petitioner makes no claim that §2D1.1 was not the applicable offense guideline.

ACCORDINGLY:

1. Petitioner's Motion for Modification of Prison Term is denied.

IT IS SO ORDERED.

**Dated: August 19, 2005**          /s/ Robert E. Coyle
668554                              UNITED STATES DISTRICT JUDGE